JUDGE CAPRONI

Andrew M. Calamari
Lara Shalov Mehraban
Steven G. Rawlings
Kevin P. McGrath
Jennifer K. Vakiener
Hane L. Kim
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, N.Y. 10281
(212) 336-0100

**17 CV 3054**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | 17 Civ. ( ) |
| Plaintiff, | **COMPLAINT** |
| - against - | **ECF CASE** |
| WENSHENG LIN and SHENG LI CHEN, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendants Wensheng Lin ("Lin") and Sheng Li Chen ("Chen") (collectively, "Defendants"),

alleges as follows:

## SUMMARY OF ALLEGATIONS

1.      This emergency action seeks to freeze assets located in the United States of

Defendants Lin and Chen, two traders based in China, who engaged in unregistered offers and

sales of penny stock shares into the public market of Immage Biotherapeutics Corp. ("IMMG"),

a biotechnology company reportedly engaged in cancer research.  Lin and Chen acquired their

shares in an unregistered transaction for approximately $0.0037 per share and sold roughly a

third of their shares for as much as $1.4745 and $1.1286 per share, for net profits of approximately $1,220,000 and $582,000, respectively. The majority of Defendants' profits were the result of the sales of IMMG securities just a few days after promotional websites began touting IMMG's stock through claims that were, at a minimum, misleading, and before trading in IMMG was suspended by the Commission on April 4, 2017.

2.      Lin and Chen sold these unregistered shares into the public market in violation of Sections 5(a) and (c) of the Securities Act of 1933 [15 U.S.C. § 77e(a) & (c)]. Lin and Chen both sold small amounts of IMMG's shares in 2015 and 2016. Beginning on January 30, 2017, however, although no public news or filing by IMMG was issued, trading volume in IMMG and its share price both increased markedly. Both Lin and Chen increased their sales during this period.

3.      Beginning on March 28, 2017, until the trading was suspended on April 4, 2017, there was a promotional campaign tied to a press release issued by IMMG after market close on March 27, 2017. Volume in IMMG increased dramatically, and the price increased to as high as $1.62 as at least three promotional web-sites sent emails touting IMMG and making claims that were, at a minimum, misleading. During this period, Lin sold approximately 1.28 million shares of IMMG for net profits of approximately $1.11 million dollars, and Chen sold approximately 660,000 shares of IMMG for net profits of approximately $486,000.

4.      None of the sales of IMMG securities by Lin and Chen in 2015, 2016 or 2017 were made pursuant to a registration statement filed with the Commission, and those sales violated Section 5 (a) and (c) of the Securities Act.

5.      The Defendants reside abroad and have the ability to move assets quickly outside of the United States. Lin already transferred $65,000 on February 9, 2017 and, on April 3, 2017,

a few days after the promotion began, he transferred $458,000 – both illegal proceeds from his sales of IMMG stock – to an account at a bank in Hong Kong.  On March 6, 2017, Chen transferred approximately $97,000 – illegal proceeds from her sales of IMMG stock – to an account at the same bank in Hong Kong.  Since then, both Lin and Chen have attempted to wire to Hong Kong hundreds of thousands more.  Absent an immediate ex parte asset freeze, Defendants are likely to transfer their remaining proceeds and assets beyond the reach of the Commission or a U.S. court.

6.      By this action, the Commission seeks to prevent the dissipation or transfer out of the U.S. of any remaining assets illegally gained from Defendants' trading in IMMG securities and compel expedited discovery in order to gather additional evidence in support of an asset freeze to preserve all remaining assets pending a final resolution of this action.  The Commission also seeks a judgment from the Court:  (a) finding that the Defendants violated Section 5(a) and (c) of the Securities Act; (b) permanently enjoining the Defendants from violating Section 5(a) and (c); (c) permanently prohibiting the Defendants from participating in an offering of penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)]; (d) ordering the Defendants to disgorge the proceeds generated from offering and selling the securities of IMMG and to pay prejudgment interest thereon; (e) requiring the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and (f) granting such further equitable relief as may be appropriate or necessary for the benefit of investors.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this civil enforcement action pursuant to Section 20(b) and (c) and Section 22(a) and (c) of the Securities Act [15 U.S.C. §§ 77t(b) & (c), 77v(a) & (c)].  The Defendants made use of the means and instruments of interstate commerce in

connection with their acts, transactions, practices and courses of business alleged in this Complaint. The Defendants engaged in conduct within the United States constituting a significant step in furtherance of their violations, and the Defendants engaged in conduct outside the United States that had a foreseeable substantial effect within the United States.

8.      Venue lies in the Southern District of New York pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] because certain of the acts, practices and courses of business constituting the violations described in this Complaint occurred in this District. For example, the broker-dealer through whom Defendant Lin sold all of his shares of IMMG, Broker A, was located in Manhattan, New York and Chen sold IMMG shares to a broker-dealer located in Manhattan, New York on February 8, 2017.

## THE PARTIES

9.      The plaintiff is the Securities and Exchange Commission, which brings this action pursuant to the authority conferred on it by Section 20(b) and (c) of the Securities Act [15 U.S.C. § 77t(b) & (c)].

10.     Defendant Lin, age 23, resides in the Guandong province of China. According to new account documentation from his broker-dealer, he is an Assistant Engineer at Shantou Jinping Sunny Machinery Factory, which deals with machinery, industrial parts, and tools.

11.     Defendant Chen, age 32, resides in the Guandong province of China. According to new account documentation from her broker-dealer, she is a Deputy Sale Manager at Donguan Keguan Mechanical and Electrical Co. Ltd.

## FACTS

### I.      BACKGROUND

12.     A company or person may only sell stock if they: (a) register the sale pursuant to a valid registration statement that applies to that specific offering of stock; or (b) sell the stock in

a transaction that is specifically exempt from the registration requirement of Section 5 of the Securities Act.

13.     A registration statement applies only to that specific offering of stock.  Although those who purchase from an issuer pursuant to a valid registration statement receive so-called "unrestricted shares" (i.e., stock certificates bearing no restrictive legend) every subsequent sale of that stock must also be either (a) registered pursuant to a valid registration statement that applies to that specific offering of stock; or (b) sold in a transaction that is specifically exempt from the registration requirement of Section 5 of the Securities Act.  Once the Commission establishes a *prima facie* case that stock has been sold without a valid registration statement, the burden of proof shifts to the seller to establish that each sale of stock was sold in a transaction that is specifically exempt from the registration requirement of Section 5 of the Securities Act.

**Issuance of IMMG Securities**

14.     IMMG's corporate predecessor, Epicure Charcoal, Inc. ("EPCC"), was incorporated in Nevada on June 21, 2012.  EPCC claimed it was a "development-stage company that intends to sell our own brand of Charcoal products for BBQ and restaurant grilling purposes."

15.     On December 10, 2012, EPCC filed a Form S-1 registration statement with the Commission seeking to register the sale of 4,500,000 shares of common stock at $0.04 per share.  Form S-1 is an initial registration form for the public offer and sale of securities by companies and is used when no other form is authorized or prescribed.  The EPCC Form S-1 registration went into effect on July 31, 2013, after three amendments.

16.     In and around August and September 2013, 38 individuals, all based in South Africa, purportedly entered into Subscription Agreements to purchase a total of 147,042 shares

5

of EPCC from the company for a total of $5,911.03, or approximately $0.04 per share.

**Acquisition By Defendants of IMMG Securities**

17. On or about March 31, 2015, Lin purchased 4,526,067 shares of EPCC, purportedly from certain South African individuals for $16,912.74, for a price per share of $0.003737. Also on or about March 31, 2015, Chen purchased 3,897,621 shares of EPCC for $14,564.40, purportedly from certain South African individuals for a price per share of $0.003737.

18. There were no registration statements filed or in effect with respect to the purported sales of EPCC securities from the South African individuals to Lin or Chen. In particular, the purported sale of shares from the South African individuals to Lin and Chen were not registered pursuant to the EPCC July 2013 registration statement or any other valid registration statement that applied to those specific sales of stock.

19. On May 12, 2015, EPCC changed its name to Immage Biotherapeutics Corp. and its ticker symbol to IMMG. On May 21, 2015, EPCC filed an Article of Merger with the Nevada Secretary of State, "whereby it entered into a merger with its wholly-owned subsidiary [IMMG]." IMMG was described as "a biotechnology company developing cancer immunotherapy through the rapid and efficient development of cutting edge immunotherapy candidates using bioinformatics and outsourced laboratory resources."

## II. THE DEFENDANTS OFFERED AND SOLD IMMG SECURITIES WITHOUT A REGISTRATION STATEMENT BEING IN EFFECT FOR THEIR OFFERS AND SALES

**Lin's Sales of IMMG**

20. After depositing 4,526,067 IMMG shares with Broker A in August 2015, Lin made low-volume trades in 2015 and 2016. Lin traded on four days in 2015 and seven days in

2016, selling less than 20,000 shares total and at most 4,440 shares at a time.  Prices during this time ranged from $0.17 to $0.42.

21.     Beginning in late January 2017, Lin began selling more shares.  From January 31, 2017 to March 21, 2017, Lin sold IMMG shares on ten days, with an average 18,774 shares per day, at daily average prices ranging from $0.2543 to $0.7755 per share.

22.     From March 28, 2017, when promotional emails (discussed below) began touting IMMG, through April 3, 2017, Lin substantially increased the volume of his sales of IMMG.  He sold a total of 1,279,734 shares in five days, at daily price averages ranging from $0.65 to $1.47 per share.  On March 28, 2017, Lin sold 664,000 shares for net proceeds of $416,080.   On April 3, he sold 277,000 shares at an average price of $1.4745, but at 1:35 p.m. he placed several limit orders to sell 120,000 shares more at prices from $1.63 to $1.72.  About an hour later, he increased these orders to 20,000 share increments, raising the total shares he would have sold to 200,000 shares (had the price kept rising).

23.     Before the market opened on April 4, Lin sent his broker sell orders for 73,000 shares to sell at prices from $1.26 to $1.36; these sales could not occur because the trading was suspended by the Commission.

24.     In total, Lin sold 1,486,734 shares for $1,226,205.48 (net of fees), with a cost basis of $5,555.92.  Lin's profit on these sales was $1,220,649.56, for a profit of approximately $0.82 per share.

25.     No registration statements were filed or in effect with respect to any of these offers or sales by Lin to the public.  In particular, these offers and sales of IMMG stock by Lin were not registered pursuant to the EPCC July 2013 Form S-1 registration statement or any other valid registration statement that applied to these specific sales of stock.

26.     The securities sold by Lin were sold through the facilities of the U.S. over-the-counter inter-dealer market, which consist of numerous broker-dealer firms that execute transactions through interstate telecommunications networks.

**Chen's Sales of IMMG**

27.     After depositing 3,897,621 IMMG shares with Broker B on September 15, 2015, Chen traded on two days in 2015, November 12 and 18, when she sold a total of 5,000 shares for $0.25 per share.

28.     Chen did not sell any IMMG shares again until January 30, 2017.  From January 30, 2017 to March 1, 2017, Chen sold 218,000 shares over 12 days (at an average of 18,167 shares per day) at an average price of approximately $0.47 per share.  On February 8, 2017, Chen sold IMMG shares to a broker-dealer located in New York, New York.

29.     From March 28, when promotional emails began touting IMMG, to March 31, 2017, Chen also substantially increased the volume of her sales of IMMG.  She sold a total of 664,300 IMMG shares at daily average prices ranging from $0.61 to $1.1286.  On April 3, 2017, Chen placed a day order to sell 100,000 shares of IMMG, but the order was not executed and trading was suspended the next day.  After the trading suspension was automatically lifted ten business days later, Chen sought to sell shares on the grey market through Broker B, but Broker B refused to do so.

30.     In total, Chen sold 887,300 shares for $586,044.63 (net of fees), with a cost basis of $3,315.84, for a profit of $582,728.79 and an approximate $0.65 profit per share.  Chen has $488,502.46 in proceeds from the sales of her IMMG shares and 3,010,321 remaining IMMG shares deposited with Broker B.

31.     No registration statements were filed or in effect with respect to any of these offers or sales by Chen to the public.  In particular, these offers and sales of IMMG stock by Chen were not registered pursuant to the EPCC July 2013 Form S-1 registration statement or any other valid registration statement that applied to these specific sales of stock.

32.     The securities sold by Chen were sold through the facilities of the U.S. over-the-counter inter-dealer market, which consist of numerous broker-dealer firms that execute transactions through interstate telecommunications networks.

**Transfers of Illegal Proceeds From Sales Out of the U.S.**

33.     Lin has already transferred $65,000 on February 9, 2017 and $458,000 on April 3, 2017 – both illegal proceeds from his sales of IMMG stock – and Chen transferred approximately $97,000 on March 6, 2017 – illegal proceeds from her sales of IMMG stock – to accounts at the same bank in Hong Kong.

34.     Both Lin and Chen have attempted to wire to Hong Kong hundreds of thousands of dollars more.  The day after the trading suspension, on April 5, 2017, Lin requested that Broker A wire out of the country $311,000 of cash that had cleared in his account that day.  The next day, April 6, when approximately $400,000 more became available, Lin asked his broker if he should change the wire to reflect all the cash available.  Lin currently has $703,218 in proceeds from the sales of his IMMG shares and 3,039,333 remaining IMMG shares deposited with Broker A.  It appears that Lin intends to transfer all of his trading proceeds out of the country as soon as he can.

35.     On March 31, 2017, Chen requested to wire $325,000 from her account to the Hong Kong bank, but Broker B was unable to process the request due to problems at another entity processing international wire transfers.  Chen has $488,502.46 in proceeds from the sales

of her IMMG shares and 3,010,321 remaining IMMG shares deposited with Broker B.

**The Context of Defendants' Illegal Sales**

36. On September 14, 2015, IMMG securities appear to have first traded through the facilities of the U.S. over-the-counter inter-dealer market, which consist of numerous broker-dealer firms that execute transactions through interstate telecommunications networks.   Over the following year, IMMG traded on only 20 days, from prices ranging from $0.15 to $0.42, and average volume on days traded of only 2,617 shares.

37. IMMG issued press releases on September 13, 2016, November 28, 2016, January 6, 2017 and February 16, 2017.  No IMMG shares traded on any of these days except January 6, 2017, when 300 shares traded.

38. On March 25, 2017, a penny stock promotional website, Stock Promotion Website A, referred email subscribers to an upcoming stock tip.  On March 27, 2017 at 11:30 AM, Stock Promotion Website A sent another email stating, in part, "IMPORTANT ALERT: MY STOCK TIP OF THE YEAR IS COMING UP TOMORROW.  READ NOW!"  This email further stated, "I'm about to send you my special report tomorrow morning at some time between 9 AM and 10 AM EST."

39. On March 27, 2017, IMMG issued a press release stating, in part, that its immunotherapy had "successfully passed early toxicology and efficacy studies" in mice and that the results would help the company "move forward with [their] conversations with the FDA." On this day, 64,600 IMMG shares traded.

40. On March 28, 2017 at 11:18 AM, Stock Promotion Website A sent an email stating, in part, "This biotech [IMMG] may be on the cusp of getting FDA approval for its cancer therapies."  This reference to "cusp of getting FDA approval" was, at a minimum, materially

misleading.  IMMG had in its March 27 press release announced only that it had had some

success with mice and hoped to move forward in "conversations" with the FDA, and its January

6, 2017 press release made clear that no applications with the FDA were even pending and that

IMMG had only "plans to file for the FDA's IND program for approval into Phase 1 human

trials in mid-2018."  Stock Promotion Website A sent at least two additional emails to their

subscriber list similarly touting IMMG that same day and on March 29 and 30, at least one email

on March 31 and two more emails on April 3 for a total of at least ten promotional emails.

41.      On March 28, 2017, Stock Promotion Website B sent an email stating, in part,

"IMMG seems to be on the verge on [sic] curing cancer according to its latest press release."

This reference to IMMG being on the "verge on [sic] curing cancer" was, at a minimum,

materially misleading given the public information contained in IMMG's press releases

described in paragraph 40 above.  Stock Promotion Website B sent additional emails similarly

touting IMMG on, at least, March 29 and April 4, 2017.

42.      On March 28, 2017, Stock Promotion Website C sent an email stating, in part,

"This biotech may be on the cusp of getting FDA approval for its cancer therapies."  This

language, identical to the language used by Stock Promotion Website A (suggesting that the

promotional campaigns might be coordinated by the same individuals), was, at a minimum,

materially misleading.  Stock Promotion Website C sent at least one additional email touting

IMMG that same day and on April 3, 2017.

43.      In total, between March 28 and April 4, 2017, at least three promotional sites

touted IMMG to their subscriber lists with at least 16 promotional emails.

44.      Between March 28 and April 3, 2017, IMMG's average daily volume was

1,771,165, with a low of $0.40 and a high of $1.62.

11

45.     On April 4, 2017, the Commission suspended trading in IMMG stock for ten days "because of concerns regarding the accuracy and adequacy of information in the market place and potentially manipulative transactions in IMMG's common stock."

### FIRST CLAIM

46.     The Commission realleges paragraphs 1 through 45 above.

47.     Defendants Lin and Chen each violated Section 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) & (c)].

48.     Between approximately August 2015 through approximately April 2017, these Defendants, directly or indirectly, and notwithstanding the fact that there was no applicable exemption:  (a) made use of the means and instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (b) for the purpose of delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means and instruments of transportation, securities as to which no registration statement was in effect; and (c) made use of means and instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.  No valid registration statement was filed with the Commission or in effect with respect to Lin or Chen's sales of, and offers to sell, securities in IMMG.

49.     The Defendants made offers of securities in the United States and sold securities in the United States in that:  (a) sales were executed by broker-dealer firms in the United States; (b) irrevocable liability with respect to sales was incurred in the United States; and (c) title with respect to sales passed in the United States.

12

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Enter judgment in favor of the Commission finding that the Defendants each violated Section 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) & (c)] as alleged in this Complaint;

### II.

Permanently enjoin the Defendants, their agents, servants, employees, attorneys-in-fact and assigns, and those persons in active concert or participation with them or who receive actual notice of the injunction by personal service or otherwise, from violating Section 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) & (c)];

### III.

Permanently prohibit the Defendants from participating in an offering of penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)];

### IV.

Order the Defendants to disgorge, with prejudgment interest thereon, all proceeds and commissions generated by the Defendants' sales of IMMG securities, and such future amounts as the Court may find appropriate;

### V.

Order the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)]; and

VI.

Grant such further relief as the Court deems just and proper, including such equitable

relief as may be appropriate or necessary for the benefit of investors.

**<u>JURY DEMAND</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands

trial by jury in this action as to all issues so triable.

Dated:  New York, NY          Respectfully submitted,
       April 26, 2017

Andrew M. Calamari
Lara Shalov Mehraban
Kevin P. McGrath
Hane Kim
Jennifer Vakiener
Steven G. Rawlings
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, N.Y. 10281
(212) 336-0533
mcgrathk@sec.gov

14