# EXHIBIT 31

Name: CHEN SHENG LI
Acct #: ███████
Rep #: 5608

Notes:

Date: 09/10/2015                        OK

Physical Certificate Approval To: DTC

Cert #: 85          Share Quantity: 3,897,621          Cert Date: 08/31/2015

Issuer: IMMAGE BIOTHERAPEUTICS CORP.          Symbol IMMG.OTCB

CUSIP: 45250J100

**Initial Review Stamp Only**

mwilde
9/10/2015, 11:48 AM
Admin Review Completed

Notes:

**Final Review Stamp Only**

russjones
9/14/2015, 11:21 AM
Final Review Completed

**Processed Stamp Only**

bviglione
9/14/2015, 11:26 AM
Processed

**Completed Stamp Only**

AFulton
9/14/2015, 2:00 PM
Completed

■ Indemnification Letter
■ Deposited Securities Request Form
■ Attorney's Opinion Letter  W. SCOTT LAWLER
■ Registered and Current (Market Tier)
☐ Form 10-                                    ☐XBRL
☐ Form 10-                                    ☐XBRL
☐ Form 10-                                    ☐XBRL
☐ Form 10-                                    ☐XBRL

Transfer Agent Email Verifying:

Price Per Share: $ .051
Approximate Value: $ 198,778.67
Cost Basis: $14,564.40
Date Acquired: 03/31/2015

RESET

SEC-ALPINE-E-0000468



## Deposited OTC Securities Agreement

| NAME OF SHAREHOLDER/CUSTOMER | ACCOUNT NUMBER: |
|---|---|
| Chen Sheng Li | ███████ |
| NAME OF ISSUER: | ISSUE DATE: |
| Immage Biotherapeutics Corp | 8/31/15 |
| TICKER SYMBOL: | CUSIP NUMBER: |
| IMMG | 45250J100 |
| CERTIFICATE NUMBER: | NUMBER OF SHARES: |
| 85 | 3,897,821 |

This Deposited OTC Securities Agreement is made and entered into effective as of the date signed below by and between Alpine Securities Corporation, a Utah corporation ("Alpine"), and _____ Primary Capital LLC _____ ("Correspondent")

Correspondent acknowledges and agrees that it has assumed responsibility for verifying the legality and validity of any certificate deposited with Alpine pursuant to the terms of the Fully Disclosed Clearing Agreement between Alpine and Correspondent and further acknowledges that the above referenced securities (the "Securities") have not been approved or disapproved by Alpine for resale.

Correspondent represents to Alpine that it has performed the necessary due diligence investigation with respect to the Securities, including the inquiry and investigation described in Notice to Members 09-05 of the Financial Industry Regulatory Authority ("FINRA"), and has determined that any resale of the Securities will comply with applicable U.S. federal and state securities laws and regulations and the rules and regulations of FINRA.. Correspondent further acknowledges that Alpine is relying on such representations in accepting the Securities for deposit.

In Witness Whereof, this Deposited OTC Securities Agreement has been executed as of the latest dated signature below.

| CORRESPONDENT: | ALPINE: |
|---|---|
| By: _____ | By: _____ |
| Name: John Lammaro | Name: _____ |
| Title: CEO | Title: _____ |
| Date: 9/2/2015 | Date: _____ |

SEC-ALPINE-E-0000469



**ALPINE SECURITIES**

Deposited Securities Representation Form

| Indicate Type: ☒ Physical Certificate Deposit │ ☐ DWAC Transfer from Issuer │ ☐ Other Transfer | |
|---|---|
| Security Owner's Name: Chen Sheng Li | Account #: ▇▇▇▇ |
| **Security Description:** | |
| Issuer Name: Innuage Biotherapeutics Corp. | Symbol: IMMG |
| # of Shares: 3,897,621 | Date Issued: 31st day of August, 2015 |
| Cert. No.(s): 89 | Market Value: $150,000 |
| **Security Owner Questions:** | |
| 1 Security Deposit Reason (e.g., safekeeping/resale): | Resale |
| 2 Date you acquired the security? | 31st day of March, 2015 |
| 3 Amount paid for the stock/cost basis (if shares received for services, state value of services; if debt, state amount of debt converted)? | $14,564.40 |
| 4 Form of payment (if shares were issued for services or debt refer to Addendum A and B, respectively. These form(s) may not be required by your firm, please conduct your broker for instructions) | Cash by wire transfer |
| 5 Name of person/entity from whom you acquired the security | Escondida Alianza, Katherine Jacqueline |
| 6 If you acquired from a third party, how did the person who sold you the stock acquire it? (please write 'Not Applicable' if acquired directly from Issuer). | S-1/A effective Aug 1, 2013 |
| 7 Was that person an officer, director, or greater than 10% shareholder, of the Issuer at the time of acquisition or during the preceding 90 days? | ☒ No ☐ Yes ☐ Not Applicable |
| 8 Are you claiming a resale exemption? If so, which exemption? (e.g. Rule 144, Rule 145, 4(a)(1)): | No |
| 9 Was the Security covered by a registration statement when acquired? If yes, state effective date and type of registration statement: | ☐ No ☒ Yes │ Type and Filing Date: S-1/A effective Aug 1, 2013 |
| 10 Are you currently, or have you ever been, an executive officer or director of the Issuer? If yes, state position: | ☒ No ☐ Yes │ Position: |
| 11 Are you currently, or have you ever been, employed by the Issuer? If yes, state position: | ☒ No ☐ Yes │ Position: |
| 12 Number of shares owned (include the amount of this deposit, any shares held at another brokerage firm, or any other location in which you have any beneficial ownership)? | Amount: 3,897,621 |
| 13 Number of shares owned by anyone living in the same household: | Amount: 0 |
| 14 Have you or anyone affiliated or related to you sold any shares of the same class or securities in the last three months? | Amount: No |
| 15 Do you intend to sell additional securities of the same class through any other means? | ☒ No ☐ Yes │ Explain: |
| 16 Have you made any payment, directly or indirectly, to any other person in connection with the proposed sale? | ☒ No ☐ Yes │ Explain: |
| 17 Have you solicited or made arrangement for the solicitation of buy orders in connection with this sale? | ☒ No ☐ Yes │ Explain: |

| **Office Use Only** | |
|---|---|
| Shares Outstanding: | 100,201,046    OTC Market |
| Current Public Float: | |
| Ave. Volume & Source of Ave. Volume: | |
| Misc. Notes: | |

1 of 2

Revised 5/14/2014

SEC-ALPINE-E-0000470

Deposited Securities Representation Form | 2017

## Security Deposit Agreement

By signing below and submitting the Deposited Securities Representation Form (the Questionnaire) along with this Security Deposit Agreement (this Agreement) to Alpine Securities Corporation (Alpine), the security owner and/or account holder (the Security Depositor) depositing the above-listed security (the Security) acknowledges and agrees to each of the following:

1. **Updates.** The Security Depositor agrees to keep the licensing Questionnaire information up to date and current with Alpine as long as the Security Shares are kept in an account cleared by Alpine.

2. **Indemnification.** The Security Depositor agrees to indemnify and hold Alpine harmless from and against any and all public and private claims, regulatory actions, damages, liabilities, costs, and expenses, which Alpine incurs as a result of or in connection with any inaccuracy, any misleading statement, or any omission in the Depositor's responses to the Questionnaire, including paying any and all of Alpine's attorney fees and costs related thereto. As part of this indemnification, the Depositor agrees to pay, on a monthly basis or as requested by Alpine's attorneys, all of Alpine's attorney fees that are related to either the Security, the Questionnaire, or the Depositor, or to any combination of the three.

3. **Clearing Firm.** The Security Depositor acknowledges that it has/its broker is not an Alpine broker that in accepting the Security, Alpine is acting merely as a carrying or clearing firm and performs only ministerial duties with regard to the above Security. These duties may involve receipt and delivery of funds, preparation and transmission of confirmations, maintenance of records, and collection of fees. As a clearing firm, Alpine is not acting as an adviser or fiduciary to the introducing broker's client, does not accept or execute orders, and does not assert any material control over the introducing broker's business. Security Depositor acknowledges that his/her/its broker is responsible for performing the necessary due diligence investigation with respect to the Securities, including the illegality and distribution described in Notice to Members 09-05 of the Financial Industry Regulatory Authority ("FINRA"), and for determining that any resale of the securities will comply with applicable U.S. federal and state securities laws and regulations and the rules and regulations of FINRA.

4. **Cooperation with Information Requests.** The Security Depositor agrees to cooperate with any internal or external audit or regulatory inquiry relating to either this Questionnaire, the Security, or both by providing any information or documentation reasonably requested by Alpine to support the information provided in the Questionnaire and to ensure any sale of the Security complies with the Securities Laws (as defined below).

5. **Market Fluctuations.** Alpine is not responsible for any fluctuations in the market price of the Security during the clearing period, including any time after the Security Depositor submits the Security, submits the Questionnaire, or signs this Agreement. The Security Depositor acknowledges that the clearing process might take a substantial amount of time and agrees to hold Alpine harmless for, and under any and all claims relating to, any loss in market value of the Security that occurs during the clearing period.

6. **Physical Certificates.** The Security Depositor agrees that in the event of an account transfer to an outside firm, any stock deposits sent to Alpine in physical form will be returned to the address of record on the account in physical form. Returning stock in physical form may incur substantial fees. Those fees are the responsibility of the Security Depositor. Alpine will not return the stock until all of these fees are paid. The Security Depositor acknowledges that the process of returning physical certificates might take a substantial amount of time and agrees to hold Alpine harmless for, and waive any and all claims relating to, any loss in market value of the Security that occurs during that period. If Security Depositor has a preexisting written agreement to its account transfers and physical certificates with these brokerage firms, that agreement may supersede this provision.

7. **Non-DTC Eligible Securities.** Due to their labor-intensive and high-risk nature, Alpine has a unique policy for non-DTC eligible Securities. First, Alpine charges $3,000 per deposit of non-DTC eligible securities. Second, Alpine charges the customer all transfer, delivery, or other fees that are required to settle trades. Third, Alpine will not disburse any proceeds from the sale of non-DTC eligible securities until thirty (30) days after the trade settlement day. Fourth, if, for any reason, Alpine fails to deliver and the buyer's firm initiates a buy-in or close-out procedure, Alpine will pass on any resulting fees to the account holder. If you have any questions, please discuss them with your broker and ensure you thoroughly understand this policy before you send Alpine any certificates or initiate any deposits in non-DTC eligible securities.

8. **Adherence to the Securities Laws.** The acceptance of any deposit of the Security or related securities is expressly subject to the Security Depositor's strict adherence to all applicable securities laws (the Securities Laws), including, but not limited to:

   a. **Selling Unregistered Securities.** Federal securities law makes it unlawful for any person to make use of any means or instruments of interstate commerce or of the mails to sell a security which has not been registered, or to deliver through the mail a security which has not been registered. Accordingly, unless a person or entity can apply for an exemption or, so its sale of securities, all securities sold are required to be registered pursuant to Section 5 of the Securities Act of 1933 (the 1933 Act).

   b. **Securities Fraud.** Federal securities law makes it unlawful for any person to offer or sell any securities by the use of any means of interstate communication or transportation, including the mails, in order to employ a scheme to defraud, to obtain money by omitting material information, or to engage in a course of business that would operate as a fraud on the purchaser.

   c. **Insider Trading.** Federal securities law prohibits insider trading, which generally refers to buying or selling a security, in breach of a fiduciary duty or other relationship of trust and confidence, while in possession of material, nonpublic information about the security.

Alpine Securities Corporation | Member of FINRA & SIPC

SEC-ALPINE-E-0000471

Deposited Securities Representation Form | 3 of 3

Insider trading violations may also include "tipping" such information, securities trading by the person "tipped," and securities trading by those who misappropriate such information.

* **Market Manipulation.** Market manipulation describes a deliberate attempt to interfere with the free and fair operation of the market and create artificial, false or misleading appearances with respect to the price of, or market for, a security, commodity or currency. Market manipulation is prohibited under federal securities laws and

* **Anti-Money Laundering.** The Bank Secrecy Act (BSA) and its implementing regulations, is it and the U.S. Government tried to fight drug trafficking, money laundering, and other crimes. Congress enacted the BSA to prevent banks and other financial institutions from being used as intermediaries for, or to hide the transfer or deposit of money derived from, criminal activity. Federal law makes money laundering a criminal act. Money laundering is the criminal practice of filtering ill-gotten gains or "dirty" money through a maze or series of transactions, so the funds are "cleaned" to look like proceeds from legal activities.

* **Acting in concert.** Security Depositor confirms that he is not engaged in any joint, concerted, parallel, orchestrated, or coordinated action with any other person toward a common goal regarding the Securities, whether by agreement or informal arrangement or understanding, including:

  * Security Depositor's proposed sale of Securities is not being coordinated with possible sales by any other person.
  * Security Depositor is not giving or sharing, directly or indirectly, any of the proceeds from the sale of the Securities with the issuer or the person from whom the Security Depositor acquired the Securities.
  * Security Depositor has not coordinated and will not coordinate with others the sale of the Securities or options, warrants, convertible notes, or similar securities convertible into stock of the same class.
  * Security Depositor has not communicated and will not communicate with Alpine about the timing, price, or number of shares of the asset to be sold or purchased by others.
  * Security Depositor will not receive or rely on order execution suggestions, instructions, or similar advice from any other person in connection with the sale of the Securities.
  * Neither the Security Depositor nor any other person is keeping centralized records of the sale of the Securities or the proceeds therefrom for the Customer and any other person.

Accordingly, the Security Depositor represents and warrants that the information provided in this Questionnaire is true and correct, and acknowledges that Alpine will rely on the above information in determining whether to accept requests for the deposit of the Security. If the Security Depositor is unsure of, or does not understand any terms discussed either in the Questionnaire or in the Agreement, the Security Depositor should seek the advice of independent counsel, in order for Alpine to accept any deposit of any security, the Security Depositor agrees to all of the above terms of this Agreement.

The Security Depositor hereby certifies, under penalty of perjury, that the foregoing is accurate and complete in all material respects.

| _(signature)_ | CHEN SHENG LI | 08/31/2015 |
| Signature of the Security Depositor or of Authorized Person if Owner is an Entity | Print the Security Depositor's Name, or Name & Title if Owner is an entity | Date |

**Registered Representative Approval:**
The undersigned Registered Representative has carefully reviewed the Questionnaire, this Agreement, and the appropriate supporting documents, and represents to Alpine that to the Registered Representative's best knowledge the information is true and correct and is made in compliance with all applicable federal and state securities laws and regulations.

| _(signature)_ | Jimmy Sing | 9/2/15 |
| Registered Representative Signature | Print Registered Representative Name | Date |

**Principal Approval:**
The undersigned Registered Personal has reviewed the Questionnaire and represents to Alpine that to the Registered Principal's knowledge this information and attached documentation are being provided in compliance with firm policy.

| _(signature)_ | JOHN JANNERO | 9/2/15 |
| Registered Principal Signature | Print Registered Principal Name | Date |

Alpine Securities Corporation | Member of FINRA & SIPC

SEC-ALPINE-E-0000472



SEC-ALPINE-E-0000473



**BOOTH UDALL FULLER**
INTELLECTUAL PROPERTY LAW

W. Scott Lawser
Corporate/Securities Attorney
WSL@BoothUdall.com

August 31, 2013

Email: jsung@primaryllc.com

**Primary Capital LLC.**
Attn: Jim Sung
90 Broad Street, Suite 905
New York, NY 10004

Re:   *Immage Biotherapeutics Corp. (previously Epicure Charcoal, Inc.) – Legal Opinion*

Dear Mr. Sung:

I have been asked to render this opinion in connection with the proposed sale of 3,897,621 shares of common stock (the "Stock") of **Immage Biotherapeutics Corp.**, (previously Epicure Charcoal, Inc.) a Nevada corporation (the "Issuer"), held by Sheng Li Chen (the "Holder") and represented by stock certificate numbered 85, which I understand has been forwarded to your office for deposit into Ms. Chen's account with Primary Capital LLC.

The Holder acquired the Stock from four (4) previous holders (identified below), each of whom purchased the Stock directly from the Issuer on or about, August 24, 2013, pursuant to an effective Registration Statement filed by the Issuer on Form S-1/A, file number 333-185368, effective date August 1, 2013. Neither the Holder or the previous holders are or have been affiliates of the Issuer within the last ninety (90) days. The previous holders of the Stock are:

Esmeranda Esterhuizen – 4,145 shares
Francis Aubertus Gaffe – 3,300 shares
Katherina Cecilia Jacoba Germishuizen – 3,316 shares
Lorraine Jaqueline Goetseh – 3,316 shares

Ms. Chen acquired all of the shares identified above which were subject to a 273:1 forward stock split which comprise the 3,897,621 shares currently owned by Ms. Chen. Each of the four (4) shareholders sold 100% of all the shares they owned, to Ms. Chen, who was the only buyer of their shares.

---

1255 W. Rio Salado Pkwy., Ste. 215
Tempe, AZ 85281
P: 480.830.2700

Booth Udall Fuller, PLC
www.BoothUdall.com

3000 South 31st Street, Ste. 100
Temple, TX 76502
P: 254.870.5606

Primary Capital LLC.
Sheng Li Chen/IMMG
Page 2 of 2



Based on the foregoing, I am of the opinion that the stock transactions by which the Stock was issued to the Holder was validly registered pursuant to the Securities Act of 1933 (the "Act").

I have assumed that:

(i)    All signatures are genuine, and all documents submitted to me as copies conform substantially to the originals; and

(ii)    The Holder is an individual residing in China.

Based on the foregoing, I am of the opinion that the Holder is able to freely sell the Stock.

This opinion is rendered solely for your benefit in connection with the transactions regarding the Stock and may not be relied upon by you for any other purpose, or be furnished to, used, circulated, quoted or relied upon by any other person for any purpose whatsoever without my prior written consent.

This opinion expresses no further opinion regarding any restriction that may be imposed by any securities laws upon the resale of the Stock in the United States. Moreover, this opinion expresses no further opinion regarding any law other than the federal securities laws of the United States.

Sincerely,

W. Scott Lawler, Esq.

SEC-ALPINE-E-0000475

## STOCK PUCHASE AGREEMENT

**THIS STOCK PUCHASE AGREEMENT** (this "Agreement") is made as of the 31ˢᵗ day of March, 2015 by and between **Chen Shengli**, an individual residing in the Province of Guangdong, China ("Purchaser) and **Esterhuizen Esmeraida, Gaito Francis Albertus, Germishuizen Katherina and Goetsch Lorraine Jacqueline**, each an individual residing in South Africa (collectively, the "Sellers).

### RECITALS

**WHEREAS**, the Sellers collectively own and wish to sell 3,897,621 free-trading shares of common stock ("Shares") of EPICURE CHARCOAL, INC, a Nevada corporation (the "Company") ; and

**WHEREAS**, the Sellers propose to sell the Shares to the Purchaser on the terms set forth herein and Purchaser wishes to purchase the Shares from the Seller on the terms set forth herein.

IN CONSIDERATION of the promises, representations, warranties and covenants contained herein and other good valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **PURCHASE AND SALE AND CLOSING**

1.1 **Sale:** (a) Subject to the terms and conditions of this Agreement, the Sellers agree to sell the Shares to the Purchaser, and the Purchaser agrees to Purchase the Shares for **Fourteen Thousand Five hundred Sixty-Four dollars and Forty Cents** ($ 14,564.40) (the "Purchase Price").

(b) The Purchase Price shall be placed into escrow with Booth Udall Fuller, PLC, who is serving as Escrow Agent. The account wire transfer instructions for the Purchase Price as follows:

Wiring Instructions.

JP Morgan Chase, N.A.
1 Chase Manhattan Plaza
New York, NY 10005

Federal Wire ABA/Routing 021000021
ACH Routing number: 122100024
Swift: CHASUS33
Account number: ████████
Account Name: Booth Udall Fuller PLC

1.2    Conditions to Closing. It is agreed that all of the funds consisting of the Purchase Price shall remain in the Escrow Account until (a) all of the conditions of the Escrow Agreement have been met; and (b) the Sellers have delivered to the Escrow Agent all share certificates representing the Shares, each with a duly executed power of attorney and medallion signature guarantee or other form of signature guarantee that shall be acceptable to the Company's transfer agent to effect the transfer of the Shares.

1.3    Closing; Release of Purchase Price and the Securities.

(a)    Upon full performance and satisfaction of all of the conditions set forth in Section 1.2 above in the Escrow Agent, the sale of the Shares shall take place at the offices of the Escrow Agent (the "Closing").

(b)    At the Closing, the Escrow Agent shall release the Shares to the Purchaser and/or its assigns and release the Purchase Price to the Sellers.

2.    REPRESENTATIONS AND WARRANTIES OF THE SELLER

2.1    The Sellers warrant, covenant, and represent to the Purchaser with the intention of inducing the Purchaser to enter into this Agreement that:

(a)    Immediately prior to and at the Closing, each Seller has legal right and authority to sell the Shares to the Purchaser and on the Closing Date and each Seller shall transfer the Shares to the Purchaser free and clear of all liens, restrictions, covenants or adverse claims of any kind of character.

(b)    Each Seller has the legal power and authority to execute and deliver this Agreement and all other documents required to executed and delivered by each Seller hereunder and to consummate the transactions contemplated hereby and the Escrow Agreement has been validly executed by each Seller or someone authorized to sign on their behalf.

(c)    None of the Seller, during the past ninety (90) days, has been a ten percent (10%) or greater shareholder or an "affiliate" of the Company, as that term is defined in Rule 144 promulgated under the United States Securities Act 1933, as amended (the "Securities Act").

(d)    To the best of the knowledge, information and belief of each Seller there are no circumstances that may result in any material adverse effect to the Company or the value of the Shares that are now in existence or may hereafter arise.

(e)    Each Seller acquired the shares from the Corporation pursuant to an effective Form S1 registration statement.

(f)    The Seller agrees to execute and deliver such other documents and to perform such other acts as shall be necessary to effectuate the purposes of this Agreement.

SEC-ALPINE-E-0000477

3.    REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

3.1   The Purchaser represents and warrants to the Sellers that the Purchaser:

    (a)   Has the legal power and authority to execute and deliver this Agreement and to consummate the transactions hereby contemplated; and

    (b)   Has the necessary financial and business experience to make an informed decision to purchase the shares, including access to all the company's information and business operations.

    (c)   Is acquiring the Shares as principal for the Purchaser's own account, for investment purposes only, and no other person has a direct or indirect beneficial interest in the Purchased Shares.

4.    MISCELLANEOUS

4.1   The parties hereto acknowledge that they have obtained independent legal advice with respect to this Agreement and acknowledge that they have fully understand the provisions of this Agreement.

4.2   Unless otherwise provided, all dollar amounts referred to in this Agreement are in United States Dollars.

4.3   There are no representations, warranties, collateral agreements, or conditions concerning the subject matter of this Agreement except as herein specified.

4.4   This Agreement will be governed by and construed in accordance with the laws of the State of Nevada. The parties hereby attorney to the jurisdiction of the courts located in Clark County, Nevada with respect to any legal proceedings arising from this Agreement.

4.5   The representations and warranties of the parties contained in this Agreement shall survive the closing of the purchase and sale of the Purchased Shares and shall continue in full force and effect for a period of one year.

4.6   This Agreement may be executed in several counter parts, each of which will be deemed to be an original and all of which together constitute one and the same instrument.

4.7   Delivery of an executed copy of this Agreement by electronic, facsimile transmission or other means of electronic communication capable of producing a printed copy will be deemed to be execution and delivery of the Agreement as of the date set on page one of this Agreement.

Each of the parties hereto has executed this Agreement to be effective as of the last date recorded below.

**PURCHASER**

陈 山 莉          30th MARCH 2015

_____          _____
Chen Shengli          Date

**SELLERS**

_____          _____
Esterhuizen Esmeralda          Date

_____          _____
Gaito Francis Albertus          Date

_____          _____
Germishuizen Katherina          Date

_____          _____
Goestch Lorraine Jacqueline          Date

This agreement may be executed in counterparts.

4

SEC-ALPINE-E-0000479

Each of the parties hereto has executed this Agreement to be effective as of the last date recorded below.

**PURCHASER**

_____                    _____
Chen Shengli                                        Date

**SELLERS**

_____                    _____
Esterhuizen Esmeralda                               Date

_____                    _____
Gutic Frances Albertus                              Date

_____                    _____
Dermikotizen Katherina                              Date

_____                    _____
Goetsch Lorraine Jacqueline                         Date

This agreement may be executed in counterparts.

1

Each of the parties hereto has executed this Agreement to be effective as of the last date recorded below.

PURCHASER

_____        _____
Chen Shengli                            Date

SELLERS

_____        _____
Esterhuizen Esmeralda                   Date

_____        27 March 2015
Gaur Francis Albertus                   Date

_____        _____
Hermshuizen Katherina                   Date

_____        _____
Goetsch Lorraine Jacqueline             Date

This agreement may be executed in counterparts.

SEC-ALPINE-E-0000481

Each of the parties hereto has executed this Agreement to be effective as of the last date recorded below.

PURCHASER

_____          _____
Chen Shenglu                              Date

SELLERS

_____          _____
Esterhuizen Esmeralda                     Date

_____          _____
Guido Francis Albertus                    Date

_K.J. Gerrishuizen_____          30 March 2018
Gerrishuizen Katherina                    Date

_____          _____
Goorsch Lorraine Jacqueline               Date

This agreement may be executed in counterparts.

SEC-ALPINE-E-0000482

Each of the parties hereto has executed this Agreement to be effective as of the last date recorded below.

PURCHASER

_____       _____
Chen Shenzli                          Date

SELLERS

_____       _____
Esterhuizen Esmeralda                 Date

_____       _____
Gauta Francis Albertus                Date

_____       _____
Hermishuizen Katherina                Date

_____       _____
Coetsee Lorraine Jacqueline           Date

This agreement may be executed in counterparts.

SEC-ALPINE-E-0000483

SUBSCRIPTION AGREEMENT

EPICURE CHARCOAL INC.
112 North Curry Street
Carson City Nevada, 89703

A.  Instructions.

Each person considering subscribing for the Shares, should review the following instructions.

Subscription Agreement. Please complete, execute and deliver to the Company the enclosed copy of the Subscription Agreement. The Company will review the materials and, if the subscription is accepted, the Company will execute the Subscription Agreement and retain one copy of the materials to you for your records.

The Company shall have the right to accept or reject any subscription, in whole or in part.

An acknowledgment of the acceptance of your subscription will be returned to you promptly after acceptance.

Payment. Payment for the amount of the Shares subscribed for shall be made as the time of delivery of the properly executed Subscription Agreements, or such date as the Company shall specify by written notice to subscribers (unless such period is extended in the sole discretion of the President of the Company), of a check or wire transfer of immediately available funds to the Company at the address set forth below or an account specified by the Company. The closing of the transactions contemplated hereby (the "Closing") will be held on 90 days from 07-31-2013 or such earlier date specified in such notice (unless the closing date is extended in the sole discretion of the President of the Company by up to an additional 90 days). There is no minimum aggregate amount of Shares which must be sold as a condition precedent to the Closing, and the Company may provide for one or more Closings while continuing to offer the Shares that constitute the unsold portion of the Offering.

B.  Communications.

All documents and check should be forwarded to:

EPICURE CHARCOAL INC.
112 North Curry Street
Carson City Nevada, 89703

THE PURCHASE OF SHARES OF COMPANY, INC. INVOLVES A HIGH DEGREE OF RISK AND SHOULD BE CONSIDERED ONLY BY PERSONS WHO CAN BEAR THE RISK OF THE LOSS OF THEIR ENTIRE INVESTMENT.

EVERY POTENTIAL INVESTOR PRIOR TO ANY INVESTMENT OR PURCHASE OF COMPANYNAME, INC.'S SHARES SHOULD READ THE PROSPECTUS RELATING TO THIS OFFERING.

## SUBSCRIPTION AGREEMENT SIGNATURE PAGE

The undersigned (the "Subscriber") hereby irrevocably subscribes for that number of Shares set forth below, agree and subject to the terms and conditions set forth in the Corporation's Effective Final Prospectus filed on Form S-1 and dated on or around 07-01-2013.

Total Number of Shares to be Acquired: **3316**

Amount to be Paid (price of $0.04 per Share): **$ 133 - 68**

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement this **31** of **AUGUST** , 2013.

NAME (PRINT) as is should appear on the Certificate: **KATHARINA  CECILIA  JACOBA**
**GERRITSHUIZEN**

ADDRESS: ███████████████████████████████

If Joint Ownership, check one (all parties must sign above):
☐ Joint Tenants with Right of Survivorship
☐ Tenants in Common
☐ Community Property

If Fiduciary or a Business or an Organization, check one:
☐ Trust
☐ Estate
☐ Power of Attorney
Name and Type of Business Organization: _____

### IDENTIFICATION AUTHENTICATION REQUIRED:

Please use any (circle one) Social Security # - Passport - Drivers License - Tax
(ID#) Other: ███████████████

SIGNATURE **(K.)  Gerritshuizen**

### ACCEPTANCE OF SUBSCRIPTION

The foregoing Subscription is hereby accepted for and on behalf of ALPINE 5 FINANCIAL, INC.
this _____ day of **September** , 2013.

By _____
Alex Robertson, President



SEC-ALPINE-E-0000486

**ABSA**

PRELLERPLEIN

Not Transferable
Nie Oordraagbaar nie

Pay
Betaal    H Chatman

THE SUM OF
Die somme van    ONE THOUSAND, TWO HUNDRED AND SIXTY RAND ONLY.

BARCLAYS

2013-08-24
TD6 / 8338
62 - 44 - 34

KCJ Germishuizen                    For Sharks in Epupula Charcoal In





SEC-ALPINE-E-0000488