# EXHIBIT G

Glendale Securities, Inc.
Client Checklist for Deposit Documentation

In order for Glendale Securities, Inc. to accept your shares for deposit we need to obtain information and documentation that tracks the shares back to their original issuance by the company. In addition, we must verify that the shares were issued legally, and that each and every subsequent transfer was properly performed. We must be able to determine that the shares are currently free trading because they are registered or because they qualify for an exemption from registration. Please be as thorough as possible in order to avoid delays in the clearance of the certificate. Certificates received without proper supporting documentation will be returned. In most cases it will take approximately 3-4 weeks in order to clear your certificate. There are circumstances where the clearance process is shorter or longer than 3-4 weeks. Further delays occur when incomplete documentation has been provided.

| Account Number | [redacted] | Issue Name | Immage Biotherapeutics Corp. | Cert Number | 81 |
|---|---|---|---|---|---|

Relationship to Issuer (Check all that apply):
- ☐ Principal
- ☐ Consultant
- ☐ Private Placement Investor
- ☐ Bond Holder
- ☐ Other Debt Holder
- ☒ Other: Shareholder
- ☐ Owner of shares purchased in open market transactions
- ☐ Employee
- ☐ Affiliate
- ☐ Officer
- ☐ Purchased shares from another party

| Non - Affiliate Forms | Affiliate Forms |
|---|---|
| ☒ Deposit Securities Request form attached | ☐ Deposit Securities Request form attached |
| ☒ Stock Power, if the back of the certificate is not endorsed (Medallion not required) attached | ☐ Stock Power, if the back of the certificate is not endorsed (Medallion not required) attached |
| ☒ Certificate attached | ☐ Certificate attached |
| ☒ Client Checklist for Deposit Documentation (this form) | ☐ Sellers Rep attached |
| | ☐ Addendum to Sellers Rep Attached |
| | ☐ Form 144 attached and completed |
| | ☐ Client Checklist for Deposit Documentation (this form) |

Origin of Shares

Was a Promissory Note, Other Obligation or Installment Contract used to purchase the shares from the issuer or an affiliate of the issuer?

| ☐ Yes | ☐ Provide copy of the promissory note |
| ☒ No | Proceed to next question |

How were the shares originally issued from the issuer? Even if you were not the original person that purchased the shares from the issuer we will still need this documentation. Please check one and provide corresponding documentation.

| ☐ Private Placement | ☐ Provide copy of executed PPM |
| | ☐ Provide copy of payment |
| ☒ Registration Statement | ☐ Provide copy of subscription agreement |
| | ☐ Provide copy of payment |
| ☐ Consultant Agreement | ☐ Provide copy of consulting agreement |
| ☐ Debt conversion | ☐ Provide copy of evidence debt exists (i.e. debt agreement) |
| | ☐ Provide copy of notice of conversion |
| | ☐ Provide copy financial transactions (i.e. checks, wires) |

Page 1 of 2

SEC-GLENDALE-E-0012570

Glendale Securities, Inc.
Client Checklist for Deposit Documentation

|  |  |
|---|---|
|  | ☐ Provide evidence that debt exists on financials<br>_____ Number of times the debt has been transferred (as debt) to other parties.<br>_____ Number of times the debt has been converted into shares.<br><br>List the names of ALL of the previous owners of the debt:_____ or ☐ N/A |
| ☐ Unknown since I purchased in the open market | ☐ Provide brokerage confirmation or statement |
| ☐ Bankruptcy | ☐ Provide a copy of the bankruptcy reorganization plan authorizing the issuance of free trading shares |
| ☐ Merger/Reorg/Other/Unknown | ☐ Call client services before proceeding |

| Have there been any subsequent transfers after the initial issuance by the issuer? ||
|---|---|
| ☒ Yes | ☒ Provide copy purchase agreement or other documents evidencing transfer from previous owner*<br>☒ Provide copy of payment to previous owner*<br>*If there are multiple transfers provide these documents for each transfer.<br>Describe each transfer: |
| ☐ No | Proceed to Tradability of Shares |
| ☐ Unknown | ☐ Call client services before proceeding |

Tradability of Shares

| Are the shares registered? ||
|---|---|
| ☒ Yes | What type of registration statement?<br>☒ S-1/SB-2   Effective Date: August 1, 2013<br>☐ S-3   Effective Date:<br>☐ S-8   Effective Date: |
| ☐ No | What exemption from registration is being relied upon for the tradability of the shares? |
|  | ☐ Rule 144 | ☐ Provide Rule 144 opinion |
|  | ☐ Bankruptcy Reorg | ☐ Provide a copy of the bankruptcy reorganization plan authorizing the issuance of free trading shares |
|  | ☐ Other | ☐ Call client services before proceeding |

By signing this form I acknowledge if I subsequently transfer the position being deposited with this form to another broker-dealer by any means Glendale Securities, Inc. will charge me a fee of $1000.

| Client Name | Lin Wen Sheng | Date | 07/24/2015 |
|---|---|---|---|
| Signature | X  [signature] | | |

Page 2 of 2

SEC-GLENDALE-E-0012571



Electronic Transaction Clearing, Inc.

## DEPOSIT SECURITIES REQUEST
### FOR BULLETIN BOARD, PINK SHEET AND UNREGISTERED SECURITIES (DSRQ)

| | |
|---|---|
| Issuer/Company Name and (Ticker Symbol): | Immage Biotherapeutics Corp. (IMMG) |
| Number of shares being deposited: | 4,526,067 |

Indicate Transfer Type:
- ☑ Physical Certificate Deposit
- ☐ DWAC/DRS Transfer from Issuer
- ☐ Other Transfer _____
- ☐ ACAT
- ☐ DTC/Free Receive

| | |
|---|---|
| Introducing Broker Name: | Glendale Securities, Inc. |
| Shareholder Name: Lin Wen Sheng | Account #: [redacted] |
| Were these shares purchased in the market on OTCBB or Pink Sheets? If yes, then attach proof of purchase (e.g. confirm or statement) and sign on page 4. No further information is required. | ☐ Yes ☑ No |
| Were these shares acquired through an Employee Stock Option Plan (ESOP)? If yes, then attach the *company's* SEC Form S-8 and sign on page 4. No further information is required. | ☐ Yes ☑ No |

**Security Description**

| | |
|---|---|
| Issuer Address: 1255 W. Rio Salado Parkway Suite 215 Tempe, AZ 85281 | Issuer Phone: (480) 830-2700 |
| Certificate No.: 81 | CUSIP: 29429A208 |

**Shareholder Questionnaire**

| # | Question | Answer |
|---|---|---|
| 1 | What is the purpose for the deposit (e.g. safekeeping, resale)? | resale |
| 2 | How many more shares are intended for deposit? | 0 |
| 3 | How many shares have been issued to, or transferred to, the Shareholder within the last year? | 0 |
| 4 | How many shares does the Shareholder control? | 4,526,067 |
| 5 | How many shares, if any, have been sold by the Shareholder? | 0 |
| 6 | Has the Shareholder or any affiliated accounts deposited shares of this issue with any broker within the last 90 days? If yes, please explain: | ☐ Yes ☑ No |
| 7 | Is the Shareholder a present or past officer, director, affiliate, control person or 5% owner of the Issuer? If yes, please describe each position including the duties and dates the position was held. | ☐ Yes ☑ No Affiliation: |
| 8 | Is any family member of the Shareholder a present or past officer, director, employee, control person, insider or large shareholder (10% or greater)? If yes, please describe each affiliation. | ☐ Yes ☑ No Affiliation: |
| 9 | Has the Shareholder made any payment to any other person in connection with the sale of the security? (e.g. commission) | ☐ Yes ☑ No |

SEC-GLENDALE-E-0012572

| 10 | Has the Shareholder made any arrangements for buy orders in connection with the sale of the security? | ☐ Yes ☑ No |
|---|---|---|
| 11 | Other information regarding security deposit that the Shareholder would like to provide: | N/A |

### Prior Owner Information

| 12 | Date security was acquired: | 20th March 2015 |
|---|---|---|
| 13 | Name of the Prior Owner: Setlhabi Kereeditse Irith, Scott David Percival | Pretorius Roelie Yolandi, Pule Lefa Jacob, Qopane Thot... |
| 14 | Please describe how these shares were acquired. (e.g. payment for services/compensation, Stock Offering, Note/Debt). | Bought from the above prior owners |
| 15 | Please attach supporting documentation of acquisition, when applicable. Such documentation includes copies of private placement memorandum, offering agreement, certain employee compensation documentation, debt agreement, convertible notes, or employee agreement. | Please list the document(s) attached: Purchase Agreement Wire payment |
| 16 | If Prior Owner and Issuer are not the same, indicate Prior Owner's acquisition date, transferor's name, and amount/manner of payment (if any): | August 1, 2013, wire payment |
| 17 | Was the Prior Owner an officer, director, affiliate, control or 10% holder of the securities at the time, or within 90 days of Owner's receipt of the security? If so, describe the nature of the affiliation. | ☐ Yes ☑ No Affiliation: |

### Restriction

| 18 | Is the security restricted from resale for any reason? If so, what is the basis for the restriction? When does the restriction end? | ☐ Yes ☑ No |
|---|---|---|
| 19 | If restricted, are the shares eligible to be sold with prospectus before the end of the restrictive period? | ☐ Yes ☑ No |
| 20 | Have these shares ever been covered by a registration statement filed with the SEC? If yes, please explain, including type and date of registration (e.g. S-1, S-8, Form 20, etc.) | ☑ Yes ☐ No S-1 registration, August 1, 2013 |
| 21 | Was the security exempt from SEC registration when the Shareholder acquired it? If yes, describe exemption relied upon. If under Rule 144, please list the applicable provision. | ☐ Yes ☑ No |
| 22 | Was the Issuer a shell company when the shares were issued? | ☐ Yes ☑ No |
| 23 | Have these shares been reported as lost or stolen to the transfer agent? (If yes, then please attach a letter from the Shareholder to the transfer agent requesting that the stop be released.) | ☐ Yes ☑ No |

SEC-GLENDALE-E-0012573

## TERMS AND CONDITIONS

In consideration of Electronic Transaction Clearing Inc. ("ETC") accepting this Deposited Securities Request, the Shareholder understands and agrees to each of the following:

1. To keep the foregoing Questionnaire information up to date and current with ETC as long as the Security shares are being sold.

2. To indemnify and hold ETC harmless from and against any and all claims, damages, liabilities and expenses which ETC incurs as a result of or in connection with any inaccuracy or omission in the Shareholder's responses to the Questionnaire.

3. To cooperate with any internal or external audit or regulatory inquiry relating to this Deposited Securities Request by providing any information or documentation reasonably requested by ETC to support the Shareholder's statements provided in the Questionnaire and any Security sale executed in accordance with the Securities Laws (as defined below). This obligation to cooperate will remain in effect before and after the completion of the transfer of the assets.

4. The acceptance of any sale of the related securities are expressly subject to the Shareholder's strict adherence to all applicable federal securities laws, including, without limitation, those described below (the "Securities Laws"):

    Selling Unregistered Securities: Federal securities law make it unlawful for a person to make use of any means or instrument of interstate commerce or of the mails to sell a security which has not been registered, or to deliver through the mail a security which has not been registered. Accordingly, unless a person can apply an exemption to its sales of securities, all securities sold are required to be registered pursuant to Section 5 of the Securities Act of 1933 (the "1933 Act").

    Securities Fraud: Federal securities law make it unlawful for any person to offer or sell securities by the use of any means of interstate communication or transportation, including the mails, in order to employ a scheme to defraud, to obtain money by omitting material information, or to engage in a course of business that would operate as a fraud on the purchaser.

    Insider Trading: Federal securities law prohibits insider trading, which generally refers to buying or selling a security, in breach of a fiduciary duty or other relationship of trust and confidence, while in possession of material, nonpublic information about the security. Insider trading violations may also include "tipping" such information, securities trading by the person "tipped", and securities trading by those who misappropriate such information.

    Market Manipulation: Market manipulation describes a deliberate attempt to interfere with the free and fair operation of the market and create artificial, false or misleading appearances with respect to the price of, or market for, a security, commodity or currency. Market manipulation is prohibited under federal securities law. Market manipulation can occur in multiple ways, including:

    - Pools – Agreements, often written, among a group of traders to delegate authority to a single manager to trade in a specific stock for a specific period of time and then to share in the resulting profits or losses.
    - Churning – Placing both buy and sell orders at about the same price. The increase in activity is

SEC-GLENDALE-E-0012574

  - intended to attract additional investors, and increase the price.
  - Runs – Creating activity or rumors in order to drive the price of a security up. This activity is usually referred to as "Painting the Tape."
  - Ramping (the market) – Actions designed to artificially raise the market price of listed securities and to give the impression of voluminous trading, in order to make a quick profit.
  - Wash sale – Selling and repurchasing the same or substantially the same security for the purpose of generating activity and increasing the price.
  - Bear raid – Attempting to push the price of a stock down by heavy selling or short selling.

<u>Anti-Money Laundering</u>: The Bank Secrecy Act (BSA), and its implementing regulations, is a tool the U.S. government uses to fight drug trafficking, money laundering and other crimes. Congress enacted the BSA to prevent banks and other financial service providers from being used as intermediaries for, or to hide the transfer or deposit of money derived from, criminal activity. Federal law makes money laundering a criminal act. Money laundering is the criminal practice of filtering ill-gotten gains or "dirty" money through a maze or series of transactions, so the funds are "cleaned" to look like proceeds from legal activities.

Shareholder Agreement:

The Shareholder hereby represents that the information provided above is true and correct. The Shareholder understands that Electronic Transaction Clearing, Inc. will be relying on such information in determining whether to accept orders for the sale of the Shareholder's securities.

As a condition to Electronic Transaction Clearing Inc's acceptance of any sale, the Shareholder hereby agrees to the Terms and Conditions above and in the Customer Agreement.

Lin Wen Sheng

X _[signature]_      07/24/2015
                     Date
                     8/19/2015

ETC Approval:

The undersigned have carefully reviewed this Deposit Securities Request and the appropriate supporting documents. Each represents to Electronic Transaction Clearing, Inc. that to his/her best knowledge the information is true and correct and is made in compliance with all applicable federal and state securities laws and regulations.

| Signatures | |
|---|---|
| [Name, Title] | Date |
| [Name, Title] | Date |

SEC-GLENDALE-E-0012575

Transfer Agent Verification: (For ETC Use Only)

| Transfer Agent: Columbia Stock Transfer Company | Address: 1869 E Seltice Suite 292 |
|---|---|
| Contact Person: Michelle | Telephone: 208-664-3544 |
| Date Verified: 8/19/2015 | By: Justin |
| Is this Issue DTC eligible? | ☒ Yes ☐ No |
| If not, are you submitting a request to make eligible? | ☐ Yes ☐ No |

Notes:

no stops or restrictions.

## Representation Letter for Registered Shareholders

Date: __August 20, 2015__                                   Percent Owned: __4.4__ %

Glendale Securities, Inc. 15233
Ventura Blvd. Suite 712
Sherman Oaks, CA 91403

Re: <u>Seller's Representations re Sale of Shares</u>

Dear Sir or Madam:

In connection with order to you today to sell or transfer __4526067__ shares of common stock (the "Stock") of __IMMG__ (the "company") through Glendale Securities, Inc.

1. Neither the undersigned, nor any person or entity listed below, presently is, or in the prior three months has been an "Affiliate" of the company as that term is used in paragraph (a) of Rule 144 (i.e. A person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under control with the company):

    a. Any relative of mine who shares the same home with me;

    b. Any trust or estate in which I or any person specified in (a) collectively own 10% or more of the beneficial interest or of which I or any such person services as Trustee, executor or in any similar capacity;

    c. Any corporation or organization of which I or any person that I specified in paragraph "(a)" is (or are) the beneficial owners collectively of 10% or more of any class of equity securities or 10% or more of the equity interest.

2. The shares were registered with the SEC pursuant to a registration statement on Form S-1 (the "Registration Statement) declared effective by the SEC on __Aug 1, 2013__.

3. Seller agrees that, at any time or times that seller proposes to offer for sale or sell any of the Shares, Seller will make reasonable inquiry to assure Seller is not, and has not been during the ninety(90) days preceding such offer or sale, an affiliate of the Company. If, in the future and prior to

the sale of all the shares, Seller determines that Seller is an affiliate of the company, then Seller will immediately notify the Company, ETC Clearing Corp and Glendale Securities, Inc.

4. Seller has not offered or sold any of the Shares except in accordance with all applicable Federal and State securities laws, and if and when Seller offers for sale or sells any of the shares in the future, Seller will do so in accordance with all applicable Federal and State securities laws.

5. Seller is not, has not been, and will not be acting in concert with any other person in connection with selling the Shares, and with respect to the Shares, is not an "Underwriter" as that term is defined in Section 2(a)(11) of the Act.

6. Seller is not aware of any material, non-public information about the company.

7. I am aware that if I become an Affiliate, I may be subject to the volume limitations of Rule 144 even if my shares are registered.

Very truly yours,

Lin Wen Sheng
_____
Seller – Account Name

[signature]
_____
Signatory

_____
Title

SEC-GLENDALE-E-0012588

## DEPOSIT ANALYSIS

| | | |
|---|---|---|
| SYMBOL | R | IMMG |
| TOTAL OUTSTANDING SHARES | R | 100,201,045 |
| TOTAL CURRENT SHARES ON DEPOSIT AT GLENDALE CLEARING FIRMS | R | |
| TOTAL RESTRICTED SHARES ON DEPOSIT | R | |
| CLIENT RESTRICTED SHARES ON DEPOSIT | R | |
| FLOAT | R | 40,142,136 |
| FLOAT SOURCE | R | TA |
| ADDITIONAL SHARES ELIGIBLE FOR SALE PURSUANT TO RULE 144 | | |
| TOTAL FLOAT | CALC | 40,142,136 |
| CLIENT SHARES BEING DEPOSITED | R | 4,526,067 |
| CLIENT SHARES ON DEPOSIT BEFORE DEPOSIT | R | |
| TOTAL SHARES ON DEPOSIT AT GLENDALE CLEARING FIRMS AFTER NEW CUSTOMER DEPOSIT | CALC | 4,526,067 |
| TOTAL PERCENTAGE OF OUTSTANING SHARES HELD AT GLENDALE CLEARING FIRMS | CALC | 4.52% |
| TOTAL PERCENTAGE OF FLOAT SHARES HELD BY CUSTOMER (RESTRICTED NOT INCLUDED) | CALC | 11.28% % for Client OK |
| TOTAL PERCENTAGE OF FLOAT SHARES HELD AT GLENDALE CLEARING FIRMS (RESTRICTED NOT INCLUDED) | CALC | 11.28% % for Firm OK |
| DATE | R | 8/19/2015 |
| REVIEWED BY | | Paul E. [signature] |

SEC-GLENDALE-E-0012632