# EXHIBIT H

144

Name: CHEN SHENG LI
Acct #: ███████
Rep #: 5608

Notes:

Date: 09/10/2015    OK

Physical Certificate Approval To: DTC

Cert #: 85    Share Quantity: 3,897,621    Cert Date: 08/31/2015

Issuer: IMMAGE BIOTHERAPEUTICS CORP.    Symbol: IMMG.OTCB

CUSIP: 45250J100

Initial Review Stamp Only

| mwilde |
| 9/10/2015, 11:48 AM |
| Admin Review Completed |
| Notes: |

Final Review Stamp Only

| russjones |
| 9/14/2015, 11:21 AM |
| Final Review Completed |

Processed Stamp Only

| bviglione |
| 9/14/2015, 11:26 AM |
| Processed |

Completed Stamp Only

| AFulton |
| 9/14/2015, 2:00 PM |
| Completed |

■ Indemnification Letter
■ Deposited Securities Request Form
■ Attorney's Opinion Letter W. SCOTT LAWLER
■ Registered and Current (Market Tier)
☐ Form 10-    ☐ XBRL
☐ Form 10-    ☐ XBRL
☐ Form 10-    ☐ XBRL
☐ Form 10-    ☐ XBRL
Transfer Agent Email Verifying:

Price Per Share: $ .051
Approximate Value: $ 198,778.67
Cost Basis: $14,564.40
Date Acquired: 03/31/2015

RESET



## Deposited OTC Securities Agreement

| NAME OF SHAREHOLDER/CUSTOMER | ACCOUNT NUMBER: |
|---|---|
| Chen Sheng Li | |
| NAME OF ISSUER: | ISSUE DATE: |
| Immage Biotherapeutics Corp | 8/31/15 |
| TICKER SYMBOL: | CUSIP NUMBER: |
| IMMG | 45250J100 |
| CERTIFICATE NUMBER: | NUMBER OF SHARES: |
| 85 | 3,897,631 |

This Deposited OTC Securities Agreement is made and entered into effective as of the date signed below by and between Alpine Securities Corporation, a Utah corporation ("Alpine"), and _____ Primary Capital LLC _____ ("Correspondent").

Correspondent acknowledges and agrees that it has assumed responsibility for verifying the legality and validity of any certificate deposited with Alpine pursuant to the terms of the Fully Disclosed Clearing Agreement between Alpine and Correspondent and further acknowledges that the above referenced securities (the "Securities") have not been approved or disapproved by Alpine for resale.

Correspondent represents to Alpine that it has performed the necessary due diligence investigation with respect to the Securities, including the inquiry and investigation described in Notice to Members 09-05 of the Financial Industry Regulatory Authority ("FINRA"), and has determined that any resale of the Securities will comply with applicable U.S. federal and state securities laws and regulations and the rules and regulations of FINRA. Correspondent further acknowledges that Alpine is relying on such representations in accepting the Securities for deposit.

In Witness Whereof, this Deposited OTC Securities Agreement has been executed as of the latest dated signature below.

| CORRESPONDENT | ALPINE |
|---|---|
| By: _[signature]_ | By: _____ |
| Name: John Lennaro | Name: _____ |
| Title: _CEO_ | Title: _____ |
| Date: _9/3/2015_ | Date: _____ |

39 Exchange Place | Salt Lake City, UT 84111
p (801) 355-5588 | f (801) 355-5742 | toll free (800) 274-5588 | alpine-securities.com
Member FINRA & SIPC



## ALPINE SECURITIES

### Deposited Securities Representation Form

| | | |
|---|---|---|
| Indicate Type: ■ Physical Certificate Deposit □ DWAC Transfer from Issuer □ Other Transfer | | |
| Security Owner's Name: Chen Sheng Li | Account #: [redacted] | |
| **Security Description:** | | |
| Issuer Name: Image Biotherapeutics Corp. | Symbol: IMNG | |
| # of Shares: 3,897,621 | Date Issued: 31st day of August, 2015 | |
| Cert. No (s): 25 | Market Value: $100,000 | |
| **Security Owner Questions:** | | |
| 1. Security Deposit Reason (e.g., safekeeping/resale): | Resale | |
| 2. Date you acquired the security: | 31st day of March, 2015 | |
| 3. Amount paid for the stock/cost basis (if shares received for services, state value of services; if debt, state amount of debt converted): | $14,564.40 | |
| 4. Form of payment (if shares were issued for services or debt prior to Subsections A and B, respectively. These form(s) may not be required by your firm, please consult your broker for instructions): | Cash by wire transfer | |
| 5. Name of person/entity from whom you acquired the security: | Esmeralda Abarca Kalberlid, Jacquline | |
| 6. If you acquired from a third party, how did the person who sold you the stock acquire it? (please write "Not Applicable" if acquired directly from issuer). | S-1/A effective Aug 1, 2013 | |
| 7. Was that person an officer, director, or greater than 10% shareholder, of the issuer at the time of acquisition or during the preceding 90 days? | ■ No □ Yes □ Not Applicable | |
| 8. Are you claiming a resale exemption? If so, which exemption? (e.g. Rule 144, Rule 144, 4(a)(1)): | No | |
| 9. Was the Security covered by a registration statement when acquired? If yes, state effective date and type of registration statement: | □ No ■ Yes (Type and Filing Date: S-1/A effective Aug 1, 2013 | |
| 10. Are you currently, or have you ever been, an executive officer or director of the issuer? If yes, state position: | ■ No □ Yes  Position: | |
| 11. Are you currently, or have you ever been, employed by the issuer? If yes, state position: | ■ No □ Yes  Position: | |
| 12. Number of shares owned (include the amount of this deposit, any shares held at another brokerage firm, or any other location in which you have any beneficial ownership): | Amount: 3,897,621 | |
| 13. Number of shares owned by anyone living in the same household: | Amount: 0 | |
| 14. Have you or anyone affiliated or related to you sold any shares of the same class or securities in the last three months? | Amount: No | |
| 15. Do you intend to sell additional securities of the same class through any other means? | ■ No □ Yes (Explain: | |
| 16. Have you made any payment, directly or indirectly, to any other person in connection with the proposed sale? | ■ No □ Yes (Explain: | |
| 17. Have you solicited or made arrangement for the solicitation of buy orders in connection with this sale? | ■ No □ Yes (Explain: | |

**Office Use Only**
Shares Outstanding: 100,201,246  —  OTC Markets
Current Public Float:
Ave. Volume & Source of Ave. Volume:
Misc. Notes:

1 of 2

Revised 8/14/2014

## Security Depositor Agreement

By signing below and submitting the Deposited Securities Representation Form (the Questionnaire) along with this Security Depositor Agreement to Alpine Securities Corporation (Alpine), the security owner and/or account holder (the Security Depositor) of the distributed security (the Security) acknowledges and agrees to each of the following:

1. **Updates**: The Security Depositor agrees to keep the Investing Questionnaire information up to date and correct for as long as the Security shares are kept in an account cleared by Alpine.

2. **Indemnification**: The Security Depositor agrees to indemnify and hold Alpine harmless from and against any and all claims, regulatory actions, damages, liabilities, costs, and expenses, which Alpine incurs as a result of or in connection with any misleading statement, or any omission in the Depositor's responses to the Questionnaire, including attorney fees and costs related thereto. As part of this indemnification, the Depositor agrees to pay, on a month to month basis, Alpine's attorneys, all of Alpine's attorney fees that are related to either the Security, the Questionnaire or the combination of the three.

3. **Clearing Firm**: The Security Depositor acknowledges that he/she/its broker is not an Alpine broker, but is acting merely as a carrying or clearing firm and performs only ministerial duties with regard to the deposit, including receipt and delivery of funds, preparation and transmission of confirmations, maintenance of records, etc. Alpine is not acting as an advisor or fiduciary to the introducing broker's client, does not exercise any material control over the introducing broker's business. Security Depositor also agrees that Alpine is responsible for performing the necessary due diligence investigation with respect to the Securities, as set forth in the standards described in Notice to Members 09-05 of the Financial Industry Regulatory Authority ("FINRA"), and for determining the securities will comply with applicable U.S. federal and state securities laws and regulations and the rules and regulations.

4. **Cooperation with Information Requests**: The Security Depositor agrees to cooperate with any information request or inquiry relating to either this Questionnaire, the Security, or both by providing any information or documentation and Alpine to support the information provided in the Questionnaire and the probable sale of the Security (as defined below).

5. **Market Fluctuations**: Alpine is not responsible for any fluctuations in the market price of the Security shares, nor any losses that the Security Depositor submits the Security, submits the Questionnaire, or signs the Agreement. Depositor also agrees that the clearing process might take a substantial amount of time and agrees to hold Alpine harmless for all claims relating to any loss in market value of the Security that occurs during the clearing period.

6. **Physical Certificates**: The Security Depositor agrees that in the event his/her account is unable to submit to an outside transfer agent to Alpine in physical form, will be returned to the address of record on the account in physical form; subject to non-substantial fees. These fees are the responsibility of the Security Depositor. Alpine will not be held responsible for the payment. The Security Depositor acknowledges that the process of returning physical certificates is an extended one and agrees to hold Alpine harmless for, and waive any and all claims relating to, any loss in market value of the security of the period. If Security Depositor has a prevailing written agreement for account transfers and physical certificates, firm that agreement may supersede this provision.

7. **Non-DTC Eligible Securities**: Due to their labor-intensive and high-risk nature, Alpine has a unique policy for handling first, Alpine charges $2,000 per deposit of non-DTC eligible securities. Second, Alpine charges the equivalent of fees that are required to settle trades. Third, Alpine will not disburse any proceeds from the sale of non-DTC eligible securities until 180 days after the trade settlement day. Fourth, if, for any reason, Alpine fails to deliver and the buyer's firm makes a buy-in, Alpine will pass on any resulting fees to the account holder. If you have any questions, please discuss this and ensure you thoroughly understand this policy before you send Alpine any certificates or initiate any deposits of non-DTC eligible securities.

8. **Adherence to the Securities Laws**: The acceptance of any deposit of the Security or related securities is the Depositor's strict adherence to all applicable securities laws (the Securities Laws), including, but not limited to:

   a. **Selling Unregistered Securities**: Federal securities laws makes it unlawful for any person to make use of any instrumentality of interstate commerce or of the mails to sell a security which has not been registered, or to deliver through the mail any security that has not been registered. Accordingly, unless a person or entity can apply for an exemption to the sale of security, required to be registered pursuant to Section 5 of the Securities Act of 1933 (the 1933 Act).

   b. **Securities Fraud**: Federal securities law makes it unlawful for any person to offer or sell any securities in interstate communication or transportation, including the mails, in order to employ a scheme to defraud, make a material misrepresentation, or to engage in a course of business that would operate as a fraud on the purchaser.

   c. **Insider Trading**: Federal securities law prohibits insider trading, which generally refers to buying or selling a security in breach of a fiduciary duty or other relationship of trust and confidence while in possession of material, nonpublic information about the security.

Alpine Securities Corporation (Member of FINRA & SIPC)

Depositor Security Representation Form 5 of 5

insider trading violations may also include "tipping" such information, securities trading by the person "tipped," and securities trading by those who misappropriate such information.

d. **Market Manipulation.** Market manipulation describes a deliberate attempt to interfere with the free and fair operation of the market and create artificial, false or misleading appearances with respect to the price of, or market for, a security, commodity or currency. Market manipulation is prohibited under federal securities laws; and

e. **Anti-Money Laundering.** The Bank Secrecy Act (BSA), and its implementing regulations, is a set the U.S. Government uses to fight drug trafficking, money laundering, and other crimes. Congress enacted the BSA to prevent banks and other financial service providers from being used as intermediaries for, or to hide the transfer or deposit of money derived from, criminal activity. Federal law makes money laundering a criminal act. Money laundering is the criminal practice of filtering ill-gotten gains or "dirty" money through a series of transactions, so the funds are "cleaned" to look like proceeds from legal activities.

f. **Acting in concert**: Security Depositor confirms that he is not engaged in any joint, collaborative, parallel, orchestrated, or coordinated action with any other person toward a common goal regarding the Securities, whether by agreement or informal arrangement or understanding, including:

- Security Depositor's proposed sale of Securities is not being coordinated with possible sales by any other person.
- Security Depositor is not paying, or sharing, directly or indirectly, any of the proceeds from the sale of the Securities with the issuer or the person from which the Security Depositor acquired the Securities.
- Security Depositor has not coordinated and will not coordinate with others the sale of the Securities or options, warrants, convertible notes, or similar securities convertible into stock of the same class.
- Security Depositor has not communicated and will not communicate with others about the timing, price, or number of shares of the stock to be sold or purchased by others.
- Security Depositor will not receive or rely on order execution suggestions, instructions, or similar advice from any other person in connection with the sale of the Securities.
- Neither the Security Depositor nor any other person is keeping contractual records of the sale of the Securities or the proceeds derived by the Customer and any other person.

Additionally, the Security Depositor represents and warrants that the information provided in the Questionnaire is true and correct, and acknowledges that Alpine will rely on this information in determining whether to accept requests for the deposit of the Security. If the Security Depositor is unsure of or does not understand any terms discussed either in the Questionnaire or in the Agreement, the Security Depositor should seek the advice of independent counsel. In order for Alpine to accept any deposit of any security, the Security Depositor agrees to all of the above terms of this Agreement.

The Security Depositor hereby certifies, under penalty of perjury, that the foregoing is accurate and complete in all material respects.

_____   CHEN SHENG LI   09/01/2015
Signature of the Security Depositor or of   Print the Security Depositor's Name, or   Date
authorized Person if Owner is an Entity   Name & Title if Owner is an Entity

**Registered Representative Approval:**
The undersigned Registered Representative has carefully reviewed the Questionnaire, this Agreement, and the appropriate supporting documents, and represents to Alpine that, to the Registered Representative's best knowledge the information is true and correct and is made in compliance with all applicable federal and state securities laws and regulations.

_____   Jimmy Sang   9/2/15
Registered Representative Signature   Print Registered Representative's Name   Date

**Principal Approval:**
The undersigned Registered Principal has reviewed the Questionnaire and represents to Alpine that, to the Registered Principal's knowledge the information and attached documentation are being provided in compliance with firm policy.

_____   JOHN TAMMARO   9/2/15
Principal's Signature   Print Registered Principal's Name   Date